THE STATE, DEFENDANT IN ERROR, v. JOSEPH FERO, PLAINTIFF IN ERROR..

Submitted January 29, 1926—Decided May 4, 1926—Filed May 19, 1926.

Crimes—Disorderly House—Gambling—Evidence Clearly Establishes Nature of House—Ownership Denied by Defendant—Evidence Tending to Identify Him With Ownership Properly Admitted—*Evidence Properly Submitted to Jury—Verdict Not Against Weight of Evidence—Judgment of Conviction Affirmed.*

On writ of error.

Before Justices TRENCHARD and KATZENBACH.

For the plaintiff in error, *Alex. R. Desevo* (*Alexander Simpson,* of counsel).

For the defendant in error, *Wilfred H. Jayne.*

PER CURIAM.

This case is before us on a writ of error. The writ brings up a judgment of the Ocean County Quarter Sessions. The plaintiff in error, Joseph Fero, was indicted by the grand jury at the April term, 1925, of the Ocean County Oyer and Terminer for the keeping of a disorderly house at 429 Fourth street, in the township of Lakewood. The indictment contained five counts. The gravamen of the indictment was that the house was one to which persons resorted for betting upon the event of horse races, and that the practice, commonly known as bookmaking, was conducted therein. The period covered by the indictment was from November 1st, 1924, to the date of taking the inquisition, April 21st, 1925. The state at the trial offered testimony that the sheriff and his deputies entered the premises in Lakewood on February 27th, 1925, and on April 13th, 1925. On the first occasion

twenty-three men were found assembled in two rooms on the second floor of the house. In these rooms were installed four telephones with tables and chairs. Slot machines, poker chips, playing cards and racing charts were taken by the sheriff. On the second occasion seven men were assembled in the premises. Three racing charts and a number of smaller slips of paper, upon some of which appeared in writing names also appearing on one of the racing charts, were taken. The charts set forth the names of horses entered in races at Bowie, Maryland, Miami, Florida, and Havana, West Indies.

Witnesses were produced by the state who testified to the making of bets on the premises. There was testimony to the effect that habitual gaming with dice was conducted on the premises. The evidence that it was a gaming-house could not be questioned.

The defense of Fero was that he was not the proprietor of it. His contention was that one by the name of Lester Megill was the proprietor. A safe with the name of Joseph Fero marked upon it was found upon the premises. Some of the habituees of the establishment testified that they had seen Fero in the house. It is true that his visits were casual and short. Fero admitted that he had leased the premises and had paid rent therefor. He denied that he had paid the rent for the period covered by the indictment. He contracted with the public service corporations for electric light and telephone service. His defense, as stated, was that, although he had been previously connected with the establishment, he was not conducting it during the period covered by the indictment. He admitted that he was upon the premises during this period; that he had seen Mr. Megill, and that he had disposed of the safe to Mr. Megill. The case was submitted to the jury. The jury returned a verdict of guilty.

The case is before this court upon a strict writ of error, and also upon specification of causes for reversal under the one hundred and thirty-sixth section of the Practice act. The latter number thirty-four, as do also the assignments of error. Most of these have not been argued by counsel for

the plaintiff in error. Those unargued will therefore be considered abandoned. *State* v. *Sabato,* 91 *N. J. L.* 370.

The first point argued by the plaintiff in error is with reference to the admission in evidence of *Exhibit S-12.* This exhibit is a telephone bill of the New York Telephone Company. It is made out to J. Fero, 420 Fourth street, Lakewood, New Jersey. It was seized by the sheriff on the occasion of his first raid upon the premises. The contention of the plaintiff in error is that this bill is dated July 8th, 1924, and, therefore, was inadmissible, because the dates alleged in the indictment were for maintaining a disorderly house between November 1st, 1924, and April 21st, 1925. This argument, however, fails, because a photostat copy of the bill which is annexed to the state's brief shows that it is dated January 8th, 1925, and not July 8th, 1924. One of the items covers toll service between December 21st and December 31st. The copy printed in the record is dated July 8th, 1924. It is incorrectly printed. The date of July 8th, 1924, is clearly erroneous. This is shown by the photostat copy. A bill dated July 8th, 1924, would not be likely to include an item for toll service from December 21st to December 31st. The bill, we think, was rendered during the period covered by the indictment, and was properly admitted in evidence.

The next point argued by the plaintiff in error is that the trial court refused to direct a verdict of acquittal on the motion of counsel for the defendant at the close of the state's case. In his brief counsel for the plaintiff in error reviews the testimony and contends that the witnesses failed to show that the defendant had control of the premises, and that he permitted it to be used as a gambling-house. The evidence has already been referred to. In *State* v. *Bindenagle,* 60 *N. J. L.* 307, it was held that error could not be assigned upon an exception taken to the mere refusal of the court in the trial of a criminal indictment at the close of the evidence for the state or on the part of the defendant to instruct the jury to acquit. This case was similar to the case under consideration. The indictment in the Bindernagle case was for keeping a disorderly house, where betting on horses was con-

ducted. This court in that case held that the question was a jury question. The assignment of error in the present case affords no basis for the consideration of this point.

The plaintiff in error must, therefore, rely upon his specification of cause for reversal. In view of the testimony both as to the character of the place and as to the connection of the defendant with it, we fail to see where the defendant suffered manifest wrong or injury in the denial of the motion. The evidence submitted by the state made it clearly a case for the jury.

The next point raised is that the verdict is against the weight of the evidence. A reading of the evidence satisfied me that there is no merit in this contention. Weighed as presented to the jury, the evidence fully justified the verdict.

The judgment of conviction is affirmed.